**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | | |
|---|---|---|
| **Karen Frohn, Individually and On Behalf of All Others Similarly Situated** | : | **Case No. 1:19-cv-713** |
| | : | |
| **Plaintiff,** | : | **Judge:** |
| v. | : | |
| | : | **CLASS ACTION COMPLAINT** |
| **Globe Life and Accident Insurance Company** | : | **and** |
| | : | |
| **Defendant.** | : | **JURY DEMAND** |
| | : | |
| | : | |

Plaintiff Karen Frohn, by and through her attorneys, brings this action against Globe Life and Accident Insurance Company ("Globe" or "Defendant"). All allegations made in this Class Action Complaint are based upon information and belief except those allegations that pertain to Plaintiff, which are based on personal knowledge. Each allegation in this Class Action Complaint either has evidentiary support or, alternatively, pursuant to Rule 11(b)(3) of the *Federal Rules of Civil Procedure*, is likely to have evidentiary support after a reasonable opportunity for further investigation or discovery.

## NATURE OF THE ACTION

1.      Plaintiff brings this action on her own behalf and on behalf of others similarly situated based on Defendant's failure to pay life insurance benefits owed under Ohio law.

2.      Under the plain terms of Defendant's policy, Defendant is required to "pay the proceeds of this policy to the Beneficiary when We receive due proof that the insured's death occurred while the policy was in force (or not later than two months after receipt of such proof)." However, upon the death of Plaintiff's husband, Defendant refused to process Plaintiff's claim

for life insurance benefits unless Plaintiff first provided a statement from her husband's physician and a broad medical record release. Nothing in the application or policy authorized Defendant to demand such information as a prerequisite for processing a claim. Defendant further breached its obligations under the policy by failing to pay the policy proceeds within two months of receiving due proof of death. Instead, Defendant used information from the wrongfully obtained medical records to rescind Plaintiff's policy based on alleged misstatements made in the application about her husband's medical history. Neither the policy nor Ohio law permits Defendant to conduct such post-claim underwriting.

3. Notably, on January 9, 2019, five days after Defendant wrongfully refused to pay Plaintiff's claim for life insurance benefits, Defendant agreed to a $4.5 million administrative penalty as part of a Regulatory Settlement Agreement following a Multi-State Regulation Examination into Defendant's life insurance practices. Among the "Business Reforms" Defendant was forced to adopt as part of the Settlement Agreement, (1) Defendant agreed to be "especially alert" regarding its offers of insurance without medical underwriting to prevent the usage of prohibited, inaccurate, or misleading advertising; (2) Defendant agreed to provide to the policy purchaser at the time of purchase a written document containing all coverage benefits, limits, exclusions, and deductibles; and (3) Defendant agreed to make sure that its claims manuals, underwriting procedure manuals, and related documents follow the contracts of insurance that Defendant issues and are in compliance with State insurance law.

## PARTIES

4. Plaintiff is an adult individual who is and has been at all relevant times a resident of Hamilton County, Ohio, and a citizen of Ohio.

5.     Defendant Globe Life and Accident Insurance Company is a Nebraska company with its Statutory Home Office at 10306 Regency Parkway Drive, Omaha, NE 68114.

6.     Defendant markets individual term life insurance products in Ohio primarily through direct mail, focusing on low face amount life insurance products for juveniles, their parents, and adults over age 50.  Defendant actively cultivates its existing client files by soliciting direct response mailings to previous respondents (like Plaintiff), but also solicits through direct response mailings to individuals with no prior relationship with the company.

## JURISDICTION AND VENUE

7.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a)(1) and 28 U.S.C. § 1332(d)(2)(A), because this case is a class action where the aggregate claims of all members of the proposed class are in excess of $5,000,000.00, exclusive of interest and costs, and most members of the proposed class are citizens of states different from the state of the Defendant.

8.     The Court has personal jurisdiction over Defendant because Defendant conducts significant, continuous, regular, and systematic business in this District.

9.     Venue is proper in this Court under 28 U.S.C. § 1391(b) because Defendant transacts significant business throughout this District and a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District.

## FACTS

10.     Plaintiff is no stranger to Defendant.  Indeed, Defendant has been soliciting Plaintiff to purchase Defendant's insurance products through direct mail for many years. Plaintiff purchased term life insurance from Defendant for her granddaughter in or around 2005.

Plaintiff purchased another term life insurance from Defendant for her daughter in or around 2014.  Both policies remain in force.

11.     Plaintiff also purchased a third, $20,000 term life insurance from Defendant for her husband, Gregory P. Frohn (the "Decedent" or "Mr. Frohn").[1]

12.     At some point in 2017, Plaintiff received a monthly premium bill from Defendant that solicited Plaintiff to increase the amount of Mr. Frohn's policy.  Plaintiff indicated that she wanted to take advantage of this offer and mailed the completed form back to Defendant.

13.     In response to her request to obtain additional coverage for Mr. Frohn, Defendant sent Plaintiff an application ("Application") for insurance in or around January 2018.  Plaintiff filled out the Application and returned it to Defendant by mail.   Under "Proposed Insured Name," Plaintiff entered "Gregory P. Frohn." Plaintiff signed her name above the "Applicant – Owner Signature" line at the bottom of the Application, which also required her to list "Spouse" as her "Relationship to Proposed Insured."   A true and accurate copy of the Application is attached as Exhibit 1.

14.     The Application contained the following authorization:

> I hereby authorize MIB Group, Inc. ("MIB"), if it has any records of me or my health, and any pharmacy or pharmacy benefit manager that possesses prescription history about me, to give any and all such information to Globe Life and Accident Insurance Company.  Health information obtained will not be re-disclosed without my authorization unless permitted by law, in which case it may not be protected under federal privacy rules.  I authorize Globe Life and Accident Insurance Company, or its reinsurers, to make a brief report of my personal health information to MIB.

In other words, Plaintiff agreed to allow MIB to provide information about *her* health to Globe. The Application did not request or require that the Defendant be provided access to any of Mr. Frohn's medical history or medical records.

---

[1] Although this policy lapsed at some point due to non-payment of premiums, it was subsequently reinstated.

15.     Plaintiff answered the medical questions in the Application regarding her husband's medical history and status honestly and to the best of her knowledge. Because Plaintiff attended nearly every one of her husband's physician appointments, she was familiar with the medical conditions he had been diagnosed with and treated for in the three years prior to completing the Application.

16.     After receiving the Application, Defendant called Plaintiff and left a message asking her to call back.

17.     Plaintiff returned Defendant's call and spoke to "Deborah," Defendant's agent, on February 20, 2018. Deborah read from the questions listed in the Application to confirm the information therein. Plaintiff again answered the questions regarding her husband's health honestly and to the best of her knowledge. Deborah then told Plaintiff that the Application would be submitted to underwriting and that Plaintiff would be notified by mail of a decision in 7-10 business days.

18.     As a result of the information that Plaintiff had provided during the phone conversation, Defendant changed the answer on Question No. 3 in the Application from "No" to "Yes." Question No. 3 reads: "Does the Proposed Insured have any chronic illness or condition which requires periodic medical care or may require future surgery?"

19.     Upon information and belief, as a result of the change, Defendant modified Mr. Frohn's premium class to "Sub-Standard A," and increased the monthly premiums that Plaintiff would be required to pay.[2] However, Defendant still approved Mr. Frohn for $50,000 of coverage.

---

[2] When Plaintiff received a copy of the Policy, Defendant included a notice of an "Adverse Underwriting Decision." Plaintiff can only assume this refers to an increase in premiums due to the changed answer in response to Question No. 3.

20.     Subsequently, in an undated communication, Defendant sent Plaintiff a packet of information with a cover letter offering "Congratulations!" and informing Plaintiff that her husband had been approved for $50,000 worth of term life insurance with an issue date of February 21, 2018: "***Your coverage is now in force*** and your life insurance contract is attached." (emphasis added).   The packet included Globe's standard SRTCV Renewable Term Life Insurance Policy form (the "Policy").   A true and accurate copy of the packet that was mailed to Plaintiff, including the Policy, is attached as Exhibit 2.

21.     The Policy in relevant part provides, "We will pay the proceeds of this policy to the Beneficiary when We receive due proof that the insured's death occurred while this policy was in force (or not later than two months after receipt of such proof)."

22.     The Decedent died on September 26, 2018.   His coverage was in force at that time.

23.     Shortly thereafter, Plaintiff contacted Defendant by phone to report Mr. Frohn's death.   Defendant responded by mailing Plaintiff an unsigned form letter dated October 2, 2018. The letter states in relevant part: "In order to evaluate this claim for life insurance benefits, the following proof of loss items ***must*** be submitted (marked items only)."

  (X)   Enclosed Claimant's Statement Completed by the Beneficiary.
  (X)   ***Enclosed Authorization for Release of Health Insurance Information Pursuant to HIPPA.***
  (X)   ***Enclosed Physician's Statement Completed by the Insured's Family Physician.***
  (X)   Certified Death Certificate Showing the Cause and Manner of Death.
  (X)   Police Report, if death due to accident, homicide, or suicide.
  (X)   Copy of the Obituary.
  (X)   If Death Due to Homicide, Copy of the Newspaper Article.
  (X)   Executorship Papers.

(emphasis added).

6

24. Plaintiff gathered and completed the required forms (including Certified Death Certificate) and mailed them to Defendant on October 16, 2018. Defendant stamped the forms as received on October 19, 2018. At that point, Defendant had "due proof the [Decedent's] death occurred while this policy was in force" and its obligation under the Policy to pay the claim was triggered. But Defendant did not pay the claim.

25. Instead, Defendant sent Plaintiff a letter on October 26, 2018 stating, "We are in receipt of the claim submitted under the above referenced policy. Since the Insured's death occurred within the 2-year contestable period, it will be necessary for us to request some information from the medical providers that provided treatment to the insured over the past few years."

26. Contrary to Defendant's letter, neither the Policy nor the Application provided Defendant the right to require Plaintiff to provide the Decedent's medical records as a condition of having her claim for benefits evaluated, or to allow Defendant to delay payment of the claim to allow for a post-death investigation. The Policy's incontestability clause sets forth the circumstances under which Defendant "cannot contest this policy" – it does not grant Defendant an affirmative right to contest coverage. Nothing in the Policy granted Defendant the right to contest coverage after the Decedent's death.

27. Defendant sent Plaintiff several more letters requiring her to complete additional medical authorizations, warning her that "Any delay in the return of these documents may cause complications in completing your claim" and "Once all information is received and reviewed, we will be able to make our decision concerning this claim."

28. Defendant received and/or reviewed Decedent's medical records on December 26, 2018. Defendant then sent Plaintiff a form letter dated December 27, 2018 stating that

Defendant had "received all of the medical records that have previously been requested" and would notify her if any additional information was required.

29.     On January 4, 2019 – more than two months after Defendant had received due proof of death – Defendant sent Plaintiff a letter stating that it was rescinding her Policy because its review of Decedent's medical records revealed that Decedent had disqualifying health conditions that Defendant asserted were not properly disclosed in the Application.

30.     According to Defendant's letter, "[s]ince the policy was less than two years old, medical records were required to process this claim" and "[b]ased on the medical history" in those records, "Question(s) 2(b)[3] and 3[4] [in the Application] were not answered correctly."  The letter states that "Our decision is based on the medical information we received during the course of our evaluation of this claim."

31.     Notably, however, the Policy does not allow Defendant to conduct post-claim underwriting.  Instead, by the Policy's plain language, Defendant must pay the proceeds no later than two months after receipt of due proof of death.

32.     Moreover, Defendant may not demand that a claimant provide it with a medical release authorization or a statement from the Decedent's physician as a prerequisite for having a claim for life insurance death benefits evaluated because Defendant did not reserve that right in either the Application or the Policy.

---

[3] Question 2(b) provides, "In the past 3 years, has the Proposed insured been diagnosed or treated by a member of the medical profession for… Chronic kidney disease, kidney failure, muscular disease, mental or nervous disorder, chronic obstructive lung disease, drug or alcohol abuse, or hospitalized for diabetes?"

[4] Question 3 provides, "Does the Proposed Insured have any chronic illness or condition which requires periodic medical care or may require future surgery?"

33. Upon information and belief, Defendant routinely and wrongfully denies claims for benefits under policies substantially similar to Plaintiff's Policy based on medical eligibility determinations made after the insured has died and after a claim has been submitted.

34. As a result of Defendant's wrongful conduct, Plaintiff and the members of the class defined below are entitled to damages.

## CLASS ACTION ALLEGATIONS

35. Plaintiff incorporates by reference all of the preceding allegations.

36. Defendant's most-recent NAIC Annual Statement notes that it received over $34,000,000 in life insurance premiums from Ohio policies in 2018.

37. Plaintiff's Policy is Defendant's standard SRTCV series.

38. Therefore, upon information and belief, Defendant insures thousands of Ohio policyholders pursuant to policies substantially similar to the Policy issued to Plaintiff.

39. Plaintiff's claim was processed according to Defendant's standardized claims procedures, as demonstrated by the form letters that Defendant used to communicate with Plaintiff.

40. Upon information and belief, Defendant wrongfully refused to pay life insurance benefits to at least hundreds of Ohio claimants under circumstances substantially similar to Plaintiff's.

41. Plaintiff seeks to represent the following Class:

All persons who, during the maximum period of time permitted by law,[5] filed a claim for benefits pursuant to a life insurance policy issued by Defendant in Ohio

---

[5] Ohio's statute of limitations for breach of a written contract, O.R.C. 2305.06, was amended in 2012 to reduce the length of the limitations period from 15 years to 8 years. However, Sub. S.B. No. 224 makes clear that the shorter limitation period in 2305.06 "applies to actions in which the cause of action accrues on or after the effective date of this act." *See* 2012 Ohio Laws File 135 (Sub. S.B. 224). "For causes of action that are governed by section 2305.06 of the Revised Code and accrued prior to the effective date of this act, the period of limitations shall be eight years from the effective date of this act or the expiration of the period of limitations in effect prior to the effective date of

that is substantially similar to Plaintiff's Policy, submitted proof of the insured's death, and had their claim denied or policy rescinded by Defendant because of medical information that Defendant obtained after the insured's death.[6]

42.     Excluded from the Class definitions are (1) Defendant, any entity in which Defendant has a controlling interest, and its legal representatives, officers, directors, employees, assigns, and successors; (2) the Judge to whom this case is assigned and any member of the Judge's staff or immediate family; and (3) Class Counsel.

43.     The Class Members are so numerous that joinder of all members is impracticable.

44.     There are numerous questions of law or fact common to the Class as a whole including, but not limited to, the following:

a.   whether the relevant terms of the Class Members' policies are identical or substantially similar;

b.   whether Defendant wrongfully refused to evaluate claims for life insurance benefits unless the claimant provided Defendant medical information to which Defendant was not entitled;

c.   whether Defendant wrongfully refused to play claims for life insurance benefits based upon alleged misstatements in the insurance application;

d.   whether Defendant breached the terms of the policies; and

e.    whether Defendant arbitrarily and capriciously denied coverage as described above in bad faith.

45.     Plaintiff is a member of the Class described above.

46.     Plaintiff's claims are typical of the claims of the members of the Class.

---

this act, whichever occurs first." *Id.* Therefore, the "maximum period of time permitted by law" as contained in the class definition is up to fifteen years.

[6] Plaintiff specifically reserves the right to amend this definition.

47.     Plaintiff will fairly and adequately protect the interest of the Class and has engaged counsel experienced in litigating class actions and experienced in litigating life insurance coverage class actions.

48.     The prosecution of separate actions by individual Class members will create a risk of inconsistent or varying adjudications with respect to the individual members of the Class, which could establish incompatible standards of conduct for the Defendant.

49.     Questions of law and fact common to the members of the Class predominate over any questions affecting only individual members, and a class action is superior to other available methods for the fair and efficient adjudication of this controversy.

50.     To that end, (1) upon information and belief, individual Class Members' interest in controlling and litigating separate actions would be low for a number of reasons including the difficulty of retaining and paying counsel to litigate their claims; (2) the extent and nature of any litigation previously commenced concerning this controversy has been rare and is likely to only involve a few policy holders; (3) it is highly desirable to concentrate this litigation in this particular forum so as to ensure that every member of this vulnerable population receives the policy benefits for which they paid and to which they are entitled; and (4) there likely would be little, if any, difficulties encountered in the management of this case as a class action.

## CLAIMS

### COUNT ONE

### Breach of Contract

51.     Plaintiff hereby incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

52.     Plaintiff brings this claim individually and on behalf of the Class defined above.

53.     Plaintiff entered into a contract with Defendant when she purchased the Policy from Defendant effective February 21, 2018 and paid all necessary premiums.

54.     Plaintiff and the Decedent fully performed under the contract.

55.     On September 26, 2018, the Decedent passed away.

56.     Plaintiff submitted a claim for benefits on or around October 16, 2018 on a form provided by Defendant and provided "due proof" of the Decedent's death while the Policy was in force, as required by the Policy.  All prerequisites for coverage were satisfied.

57.     According to the unambiguous terms of the Policy, Defendant "will pay the proceeds of this policy to the Beneficiary when We receive due proof that the insured's death occurred while this policy was in force (or not later than two months after receipt of such proof)."

58.     Instead, although nothing in the Policy or Application language permitted it to do so, and as a condition of having her claim evaluated, Defendant required Plaintiff to (a) sign an authorization for release of her husband's confidential medical records; and (b) have her husband's physician complete a statement regarding his medical history.  Defendant used the medical release authorization to conduct a post-claim investigation into the Decedent's medical history.  Defendant then wrongfully refused to pay Plaintiff's claim based upon the information it had obtained in its post-claim investigation.

59.     Defendant's conduct described above constitutes a breach of contract and Plaintiff has been damaged by the breach.

60.     Upon information and belief, Defendant has wrongfully denied and continues to wrongfully deny claims for payment of benefits under life insurance policies substantially similar

to Plaintiff's Policy based on its review of medical information wrongfully obtained after the death of the insured.

61.     As the result of Defendant's breach, Plaintiff and the Class Members were harmed. As such, Plaintiff and the Class Members are entitled to compensatory damages, consequential damages, punitive damages, interest, attorney fees, costs, and expenses.

## COUNT TWO

### Bad Faith / Breach of Duty of Good Faith and Fair Dealing

62.     Plaintiff hereby incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

63.     Plaintiff brings this claim individually and on behalf of the Class.

64.     Ohio law imposes upon an insurer a duty of good faith and fair dealing in attending to the claims of its insured.

65.     Defendant's refusal to process claims for benefits unless the claimant provides Defendant access to a decedent's confidential medical records and history, and Defendant's subsequent denial of claims based on that medical information is unreasonable, unfounded, and frivolous, and hence constitutes bad faith, entitling Plaintiff and Class Members to punitive damages and attorney fees.

66.     As the result of Defendant's actions, Plaintiff and the Class Members were harmed.  As such, Plaintiff and the Class Members are entitled to punitive damages, interest, attorney fees, costs, and expenses.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of the members of the proposed Class, prays: (a) for an order certifying the proposed Class and appointing Plaintiff and her

undersigned counsel of record to represent the proposed Class; (b) for an award of actual damages for Plaintiff and members of the Class in excess of $5,000,000; (c) for costs of suit herein; (d) for both pre- and post-judgment interest on any amounts awarded; (e) for statutory interest pursuant to R.C. 3915.052; (f) for payment of reasonable attorneys' fees; (g) for punitive damages; and (h) for such other and further relief as the Court may deem proper.

Respectfully submitted,

/s/Todd B. Naylor
Todd B. Naylor (0068388)
Jeffrey S. Goldenberg (0063771)
Goldenberg Schneider, LPA
1 West 4th Street, 18th Floor
Cincinnati OH 45202
Telephone: (513) 345-8291
Facsimile: (513) 345-8294
tnaylor@gs-legal.com
jgoldenberg@gs-legal.com

Catharin R. Taylor, Esq. (0059504)
Clements, Taylor, Butkovich & Cohen, LPA, Co.
125 East Court Street
Suite 800
Cincinnati, OH 45202
Telephone: (513) 721-6500
Facsimile: (513) 763-6415
ctaylor@ctbclawyers.com

Attorneys for Plaintiff

## JURY DEMAND

With the filing of this Complaint, Plaintiff hereby demands a trial by jury.

/s/Todd B. Naylor
Todd B. Naylor